**In re Grand Jury Proceedings, Alan John YUCH, Witness.**

Misc. No. 77–140.

United States District Court,
E. D. Pennsylvania.

Aug. 3, 1977.

L. Marc Durant, Asst. U. S. Atty., Philadelphia, Pa., for Government.

Thomas Colas Carroll, Philadelphia, Pa., for Witness.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On July 28, 1977, in a hearing held in open Court, Alan John Yuch was found to be in civil contempt for failing to testify before the grand jury. The Order of the Court directing that the witness be confined pursuant to 28 U.S.C. § 1826 was stayed by the Court, and bail was granted pending appeal.

On March 21, 1977, the witness was subpoenaed to appear before a grand jury in the Eastern District of Pennsylvania which is in the process of investigating the distribution of illegal drugs in this area. At the time the witness was serving a term of incarceration imposed by the United States District Court for the Northern District of California for conspiracy to violate the Federal Controlled Substance Law relating to the manufacture and distribution of methamphetamine. Upon motion of the Government, the Court granted immunity to the witness pursuant to 18 U.S.C. § 6001 et seq. On April 27, the day the witness was scheduled to appear before the grand jury, he filed motions to: continue his grand jury appearance; quash the subpoena; compel the Government to make certain disclosures; rescind the immunity order; and hold a hearing on the immunity order. An *in camera* meeting was held in chambers on that date, and the Court continued the grand jury appearance pending a hearing on May 2. On May 2, the witness filed a supplemental motion claiming, *inter alia*, that he had been the subject of unlawful electronic surveillance. He listed four telephone numbers regularly used by him that he wanted the Government to check. An *in camera* hearing was held on May 2. After argument on the motions the parties agreed that the Court would vacate the immunity order that had been entered and the Government would submit a new immunity order after consultation with the attorney for the witness. On May 25, the Court entered an immunity order agreed upon by the parties.

On July 20, at an *in camera* meeting in chambers, the Government advised the Court that the witness had appeared before the grand jury and refused to testify. The Court signed a show cause order directing the witness to appear for a contempt hearing on July 28. Both the Government and the witness filed memoranda.

At the contempt hearing the witness contended that he should not be held in contempt for the following reasons: (1) the immunity order was defective on its face because it was not entered under 21 U.S.C.

§ 884 with an express prohibition on dissemination of such compelled testimony under 21 U.S.C. § 873(a)(4); (2) that the immunity order was defective because the Court declined to order the Government to make a pre-testimony certification of all known evidence; (3) that the Government's affidavit denying the witness's claim of unlawful electronic surveillance is insufficient.

As to (1), the witness's objection is now moot since the Government has agreed to treat the witness's grand jury testimony in such a manner that 21 U.S.C. § 873 shall have no application thereto and has agreed to not exchange such testimony with any other Federal, State or Local Governmental officials or agencies except Federal prosecutors and Drug Enforcement Administration agents assigned to the case.

As to (2), the Court ruled that the law as it presently exists, which places the burden on the Government to show that it obtained its evidence independently of the witness's testimony, gives adequate protection to the witness in the event he is subsequently indicted. *Kastigar v. United States*, 406 U.S. 441, 460–61, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

As to (3), the Court ruled, for the reasons explained hereinafter, that the Government's denial of illegal electronic surveillance was sufficient.

After the Court made these rulings, the witness was called to the bar of the Court and advised that he would be given until the next meeting of the grand jury on August 3, to testify. The witness advised the Court that when he appeared he would again decline to testify and that he wished to appeal the Court's ruling. It was agreed by the parties that it would not be necessary for the witness to again appear before the grand jury and decline to testify. The Court then held the witness in contempt of court.

28 U.S.C. § 1826(a) authorizes a court to confine a witness who refuses "without just cause" to testify before or provide other information or materials to a

grand jury when ordered by the court to do so. 18 U.S.C. § 3504 provides in pertinent part:

(a) In any . . . proceeding in or before any court, grand jury . . .

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act.

Section 3504(b) defines an "unlawful act" as one involving illegal wiretapping or electronic surveillance. When a grand jury witness raises such a claim, it is well settled that § 3504 requires the Government to affirm or deny the occurrence of such surveillance. An insufficient denial is just cause for refusing to answer questions. *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

The Government filed three affidavits pursuant to § 3504. The first was filed by Special Agent Parks of the Drug Enforcement Administration (DEA) and is attached as Exhibit 1. He swore to the following: he is responsible for the DEA investigation in which information concerning the witness was acquired; no other Governmental investigatory agency has ever been involved in this investigation; the DEA has never conducted any electronic surveillance of the witness; the witness was never the subject of any other DEA investigation; and that there was no Government interception of wire communications in connection with this particular investigation except for tape recordings made by Special Agent Parks of his own telephone conversations with certain persons. (Not the witness).

The second affidavit was filed by L. Marc Durant, an United States Attorney conducting the grand jury investigation. (Attached as Exhibit 2). He swore that he was in charge of and fully familiar with the files maintained by the United States Attorney's Office in this District; that there is no indication in these files that the witness was ever the target of any electronic surveillance; that both United States Attor-

ney's Offices in the Eastern District of Pennsylvania and the Northern District of California (where the witness resides and where he was recently indicted and sentenced) never conducted any electronic surveillance of the witness; that the information which forms the basis for the witness's questioning before the grand jury has all been gathered from direct sources and that none of the information results from any electronic surveillance of the witness, and that the witness will not be asked to testify, directly or indirectly, on the basis of any intercepted wire or oral communications of his.

The third affidavit (Exhibit 3) is also from Special Agent Parks, and covers the telephone numbers that the witness requested be checked. Parks stated that none of those numbers were ever the subject of electronic surveillance by any DEA agent.

The witness's claims pursuant to § 3504 are contained in an affidavit of July 20 (attached as Exhibit 4), in which he sets forth three factual allegations. First, he alleged that telephone numbers of a person with whom he was in contact were regularly changed because of "buzzing noises, unexplained background sound, echos on the telephone line".

Second, the witness alleged that information provided by his counsel showed that the affidavit of Special Agent Parks was inaccurate in at least one material respect. He claimed that his counsel had knowledge through representation of another client that a clandestine recording of a telephone conversation occurred as part of this particular investigation. Because Special Agent Parks stated that no electronic eavesdropping (other than his tapes of calls made by him) occurred with respect to this investigation, the witness alleged that Parks did not make a thorough examination of DEA files.

The witness's third claim involved the telephone of his employer, the East-West Commodities Exchange, Inc., where he began working in January, 1977. The witness swore that an electronics expert hired by the firm discovered a pen register (a device that records telephone numbers but not

conversations), and that a subsequent investigation revealed that the telephone company admitted installing the device at the request of a person whose identity it would not reveal.

The Government, in its response to the witness's affidavit, pointed out in connection with the alleged pen register incident, that a pen register can record telephone numbers not conversations. Thus, the witness's communications could not possibly have been overheard. The Government also responded to the witness's claim that Agent Parks was unaware of electronic surveillance that occurred in connection with this investigation by stating that the incident to which the witness referred was part of an entirely separate investigation concerning a person who was also being investigated in the instant inquiry but was never overheard in the instant investigation.

The witness argues that in light of his allegations the Government's denial of electronic surveillance is inadequate and must contain a check of the seven agencies which customarily conduct electronic surveillance. A seven agency check may be required in certain instances, however, we find that in this case the Government's denial is sufficient to satisfy § 3504.

Although our Third Circuit has considered § 3504 responses, the recent decisions are situations where the Government had done a seven agency check and the witness contended that such a check was not sufficient. *Matter of Grand Jury Impaneled, January 21, 1975*, 529 F.2d 543 (3d Cir.), *cert. denied Freedman v. United States*, 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976); *United States v. D'Andrea*, 495 F.2d 1170 (3d Cir.), *cert. denied* 419 U.S. 855, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974). Our attention has not been called to any case in which the Third Circuit has considered the circumstances under which a lesser showing is sufficient.

In *United States v. Weiner*, 418 F.Supp. 941 (M.D.Pa.), *aff'd* 546 F.2d 421 (3 Cir. 1976), *cert. denied* 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 557 (1977), Judge Nealon ruled upon the sufficiency of the Govern-

ment's denial of electronic eavesdropping in connection with a grand jury investigation into the harboring of Patty Hearst. Emphasizing the extraordinary nature of the case involving "national overtones", the Court required a seven agency check. Judge Nealon cautioned, however, that in the ordinary case the affidavits of the United States attorney and the agent in charge of the case may suffice. 418 F.Supp. at 944.

In *In Re Grusse*, 402 F.Supp. 1232 (D.Conn.), *aff'd* 515 F.2d 157 (2d Cir. 1975), the District Court held that the Government's denial may properly be based upon an inquiry directed solely to the investigator having supervisory responsibilities for the matter. In that case the Court relied upon an affidavit filed by the Assistant United States Attorney assigned to the matter who had only checked with the FBI. The affidavit in *Grusse* is far less detailed and informative than the affidavits in the instant case, which reveal all of the surveillance conducted in the entire investigation. As stated by Judge Lumbard in his concurring opinion in the Circuit Court,

It must be remembered that any electronic surveillance by the government is relevant only if it is somehow used in formulating questions that the grand jury intends to ask. Thus, surveillance conducted by the government, the results of which were not known to the agents investigating this case, would not be relevant. . . . I think that the assistant United States Attorney handling a case and the FBI agent in charge of the investigation of a case are the two people most likely to know if the fruits of any electronic surveillance were used to gain information on which the grand jury would base its questions. Thus, I think that the denial was sufficient. (footnotes omitted). 515 F.2d at 159.

In *In Re Quinn*, 525 F.2d 222, 226 (1st Cir. 1975), the Court stated:

We think, therefore, that for the § 3504 response to be adequate in this case, there must be included an explicit assurance indicating that all agencies provid-

ing information relevant to the inquiry were canvassed. This requirement may be met in various ways. The simplest here might be a representation, by supplemental affidavit, that the Government's questions to Quinn are not directly or indirectly, in whole or in part, the product of information from outside investigations, but that they come exclusively from the investigatory efforts of the two agencies about whose activities Mr. Deachman or Mr. Sawyer have knowledge (viz., the New Hampshire United States Attorney's office and the Bureau of Alcohol, Tobacco and Firearms).

■ In the instant case, the Government has stated, through the affidavit of Special Agent Parks, that the Government categorically denies having any information in the file from any other Governmental source. Furthermore, the Government has also unequivocally denied that this witness has ever been the subject of any electronic surveillance by DEA. In addition, the United States Attorney, in his affidavit, stated none of the questions the witness will be asked results from any electronic surveillance of the witness and that the witness will not be asked to testify on the basis of any intercepted wire communications of his. We found that the affidavits of the Government in this case were sufficient and on this basis we held the witness in contempt for his failure to testify before the grand jury.

### EXHIBIT 1

### AFFIDAVIT

Commonwealth of Pennsylvania : 
: ss
County of Philadelphia :

Robert D. Parks, being duly sworn according to law, deposes as says as follows:

1. I am a Special Agent with the Drug Enforcement Administration of the United States Department of Justice. I have been employed as a DEA agent for three years. Prior to that I was employed as a Sergeant with the Marion County (Oregon) Sheriff's Office. I served in various capacities with the Marion County Sheriff's Office for a total of 5½ years.

2. Since April 1975 I have been assigned to and am currently responsible for DEA Central Tactical Investigation No. 7. It was in this particular investigation that information concerning the activities of Alan John Yuch was acquired by DEA. Yuch was not the subject of any other DEA investigation. I am familiar with the entire investigation and all the DEA files and records pertaining to it. I am also thoroughly knowledgeable about what electronic surveillance has been conducted by DEA in connection with this investigation.

4. No other government investigatory agency besides DEA has ever been involved in the investigation.

5. Except for tape recordings personally made by me of my own telephone conversations with certain individuals, there has been no government interception of wire communications in Central Tactical Investigation No. 7. Alan John Yuch was not one of the individuals whose telephone conversations with me were recorded, and DEA has not intercepted any wire communications of his made from any telephone.

6. DEA never attempted to intercept any oral (nonwire) communications of Alan John Yuch, and he was never the target or subject of any eavesdropping, listening or similar device.

7. At no time during Central Tactical Investigation No. 7 was Alan John Yuch the target or subject of any form of electronic surveillance.

8. The above information is true and correct to the best of my knowledge, information and belief.

(s) Robert D. Parks

Sworn to and subscribed before me this 11th day of May, 1977.

(s) B. R. Manton
Deputy Clerk
U.S. District Court

## EXHIBIT 2

## AFFIDAVIT

Commonwealth of Pennsylvania :

ss

County of Philadelphia :

L. Marc Durant, being duly sworn according to law deposes and says as follows:

1. I am an Assistant United States Attorney in the Eastern District of Pennsylvania. I am assigned to the above-entitled matter.

2. I am in charge of and fully familiar with the files maintained by the United States Attorney's Office in this district in this matter. There is no indication anywhere in these files that Alan John Yuch has ever been the target or subject of any form of electronic surveillance.

3. I have carefully examined and am familiar with the files maintained by the United States Attorney's Office in the Northern District of California pertaining to Alan John Yuch and Criminal No. 76–0368 (N.D.Cal.). There is no indication anywhere in those files that Alan John Yuch has ever been the target or subject of any form of electronic surveillance.

4. Apart from Yuch's own allegations, I know of no information whatsoever indicating that Yuch has ever been the target or subject of any electronic surveillance by DEA in Centac 7 or in any other DEA investigation. I also know of no other information whatsoever indicating that Yuch has ever been the target or subject of any electronic surveillance by any other government agency.

5. On July 26, 1977 I inquired of David W. Marston, United States Attorney, Eastern District of Pennsylvania and Joel Friedman, Chief, Organized Crime Strike Force, Eastern District of Pennsylvania, whether there had ever been any electronic surveillance of Alan John Yuch in this District. Both replied that they knew of no such surveillance and had never sought authorization pursuant to 18 U.S.C. § 2516 et seq. to engage in any.

6. On July 26, 1977 I inquired of the United States Attorney's Office in the Northern District of California, whether there had ever been any electronic surveillance of Alan John Yuch in that district. On July 27, 1977 I was informed by that office that they knew of no such surveillance and had never sought authorization pursuant to 18 U.S.C. § 2516 et seq. to engage in any.

7. The information which forms the basis for Alan John Yuch's questioning before the grand jury has all been gathered from direct sources. None of the information results from any electronic surveillance of Yuch. The direct sources include statements made to investigators and documentary evidence collected by them. Yuch will not be asked to testify about, or directly or indirectly on the basis of, any intercepted wire or oral communications of his.

8. The above information is true and correct to the best of my knowledge, information and belief.

(s) L. Marc Durant

Sworn to and subscribed before me this 27th day of July, 1977.

(s) B. R. Manton
Deputy Clerk
U.S. District Court

## EXHIBIT 3

## SUPPLEMENTAL AFFIDAVIT OF ROBERT D. PARKS

Commonwealth of Pennsylvania :

ss

County of Philadelphia :

Robert D. Parks, being duly sworn according to law, deposes and says as follows:

9. During the Drug Enforcement Administration investigation of Alan John Yuch, no DEA agent conducted any form of electronic surveillance whatsoever (either surreptitious or one party consent surveillance) against telephone number 415–285–4641, listed to Sam Massaky, 921 Minnesota Street, San Francisco, California.

10. During the Drug Enforcement Administration investigation of Alan John Yuch, no DEA agent conducted any form of electronic surveillance whatsoever (either surreptitious or one party consent surveillance) against telephone number 415–433–5250, listed to Bruce Palmer, East-West Commodities, 101 Vallejo Street, San Francisco, California.

11. During the Drug Enforcement Administration investigation of Alan John Yuch, no DEA agent conducted any form of electronic surveillance whatsoever (either surreptitious or one party consent surveillance) against telephone number 415–771–6174, listed to Michael Stepanian, Esquire, 819 Eddy Street, San Francisco, California.

12. During the DEA investigation of Alan John Yuch, the following telephone numbers were listed to Marvin Gerstl at 3000 Paradise Drive, Tiburon, California:

415–388–1183
415–435–0803
415–435–9991
415–435–2045
415–435–2566
415–435–3604
415–435–9270

No DEA agent conducted any surreptitious electronic surveillance whatsoever against any of the above listed telephone numbers. I personally made telephone calls to certain persons at those telephone numbers and tape recorded my own conversations. None of those calls were with Alan John Yuch. No telephone conversation of Yuch on any of those telephone numbers was ever the subject of any form of DEA electronic surveillance.

13. On July 29, 1977 I inquired of the DEA electronic surveillance coordinator, Washington, D. C., whether there had ever been any electronic surveillance conducted by DEA agents against any of the telephone numbers listed in this affidavit. I was informed that a check of the DEA records of electronic surveillance conducted by DEA agents since 1960 showed that there had been no surreptitious electronic surveillance by any DEA agent directed against any of the telephone numbers listed in paragraphs 9 thru 12 of this affidavit since 1960.

14. In connection with Yuch's investigation, DEA received no information at all from any other federal investigatory agency regarding Yuch. This includes both written investigation reports from other agencies and information given orally and informally.

15. The above information is true and correct to the best of my knowledge, information and belief.

(s) Robert D. Parks

Sworn to and subscribed before me this 29 day of July, 1977.

(s) Virginia Dekton
Deputy Clerk
U.S. District Court

### EXHIBIT 4
#### AFFIDAVIT OF WITNESS REGARDING CLAIM OF UNLAWFUL ELECTRONIC SURVEILLANCE BY THE GOVERNMENT

COMMONWEALTH OF PENNSYLVANIA:
                                SS
COUNTY OF PHILADELPHIA          :

ALAN JOHN YUCH, being duly sworn according to law, deposes and says:

1. I am the witness in the above matter.

2. I have read the affidavit of Robert D. Parks, Special Agent, Drug Enforcement Administration, dated May 11, 1977, which has been heretofore filed in this action.

3. I hereby claim, pursuant to 18 U.S.C. § 3504, that I am a party aggrieved by an unlawful act, to wit: unlawful electronic surveillance, and that evidence which is the primary product of such unlawful act substantially contributed to the Grand Jury subpoena directed to me and, further, substantially contributes to the questions which will be put to me before the Grand Jury, and in support of such claim, I hereby make the following factual showing:

a. *Previously Used Telephones*: I have previously furnished a list of specific telephone numbers which I regularly used or called during the preceeding four years

(which is the period I have reason to expect to be questioned about before the Grand Jury). My claim covers these specific telephone numbers, as supplemented by the further references in this affidavit.

b. *Gerstle Telephone at 300 Paradise Drive, Tiburon, California*: The Government is in a better position that I to ascertain these telephone numbers because Mr. Gerstle is now a Government informer. During the period in question and for sometime before, the telephone numbers at this location were regularly changed because of unusual occurrences consisting of buzzing noises, unexplained background·sound, echos on the telephone line. I personally heard these sounds myself. The reason that the telephone numbers were changed was due to our belief that interceptions of wire communications were taking place.

c. *Counsel's Information*: I have been informed by my attorney, Thomas Colas Carroll, Esquire, that Special Agent Parks' Affidavit is inaccurate in at least one material of respect, in that counsel has advised me that he has another client, whose name he has not revealed to me, who was involved in a clandestine recording of a telephone conversation with Raymond Hossbach, an alleged co-conspirator of mine. Special Agent Parks did not conduct this electronic eavesdropping, however, it was part of the "CENTAC" investigation concerning the apprehension of Raymond Hossbach. From this I have reason to believe that Special Agent Parks, although personally familiar with his own electronic surveillance as revealed in the affidavit, has not made a thorough examination of DEA files on CENTAC 7 investigation concerning electronic eavesdropping by other persons involved in the investigation.

d. *The Pen Register Incident*: During January, 1977, I became employed by the East-West Commodities Exchange, Inc., which imports house furnishing and the like from the Republic of China (i. e. Communist China). This firm sends its agents and employees to China as buyers and, as such, has been of interest to the State Department and related Federal Agencies.

Shortly after I began to work, the company hired an electronics expert to "debug" the telephones at its place of business located at 101 Vallejo Street, San Francisco, California. During the course of this examination, the electronics expert, his first name was Jeffrey, but his last name I do not recall, discovered a device attached to the telephone wires of this firm that would enable some unknown party to determine the telephone numbers dialed on out-going telephone calls. I believe that he described this to me as a "pen register."

A subsequent investigation, of which I learned through conversation with other persons in the firm, revealed that the telephone company claimed that it had been asked to install such a device but would not reveal the identity of the person or entity making the request. Further, it is unknown as to how long this device had been on the telephone.

I had used the telephones at my place of employment on many occasions before I was in under indictment and was in regular communication with my attorney. I do not know whether the device had the capacity to intercept my actual words over the telephone, but it is certain that the device had the capacity to determine what telephone numbers I dialed, along with other employees of the company.

I was later told that an individual named "Herb" who had a regular relationship with my employer in the nature of an agent of that firm, had once been detained on the border of Communist China in possession of a large sum of money and an accusation was made against him that he was entering China with the purpose of purchasing drugs for distribution to the United States.

From this, I believe that an agency of the United States Government, and I am uncertain as to which agency was engaged in the interception of wire communications from my employers' telephone. As noted, I have used this telephone on numerous occasions during my employment before the device was discovered.

ACCORDINGLY, I request that the Government's contempt petition against me be dismissed.

(s) ALAN JOHN YUCH

SWORN AND SUBSCRIBED TO BEFORE ME THIS 20th DAY OF JULY, 1977

(s) Eileen Bridget McEnroe